FILED
TAMPA, FLORIDA
2003 OCT 10 AM 10: 45
CLERK, U.S. BANKRUPTCY
COURT MIDDLE
DISTRICT OF FLORIDA

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

CHC INDUSTRIES, INC., f/k/a
CLEANERS HANGER COMPANY,

    Debtor.

_____/

Chapter 11

20775

Case No. 03-20755-8G1

### DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY GULF ATLANTIC CAPITAL CORPORATION AS FINANCIAL ADVISOR AND EXCLUSIVE INVESTMENT BANKER

Debtor, CHC INDUSTRIES, INC., f/k/a CLEANERS HANGER COMPANY, by and through its undersigned attorneys, hereby files this its Application for Authority to Employ Gulf Atlantic Capital Corporation as Financial Advisor and Exclusive Investment Banker (the "Application"). In support of this Motion, the Debtor would show:

1. On October 6, 2003 (the "Petition Date"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is operating its business and managing its property as debtor in possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

2. CHC is in the business of manufacturing steel wire garment hangers.

3. As of the Petition Date, the Debtor employed approximately 325 employees.

4. For the fiscal period ended August 31, 2003, the Debtor recognized revenues in excess of $69,000,000.00.

5. No trustee or examiner has been appointed in this case and no official committees have yet been appointed pursuant to §1102 of the Bankruptcy Code.

6. This Court has jurisdiction of this Application pursuant to 28 U.S.C. §1334. The statutory predicate for the relief requested is 11 U.S.C. §327, et seq.

7. The Debtor requires the services of an experienced financial advisor and investment banking firm to provide financial advisory services.

8. Such services would include preparing reports and other financial information as may be requested by the Debtor or Debtor's counsel. In addition, the Debtor will require investment banking services in connection with its attempts to selling some or all of its operating assets, including locating qualified purchasers, assisting in the preparation of documents in connection with the potential sale, assisting in guiding the due diligence process prequalifying bidders, and, if requested, participating in negotiations for any potential sale.

9. By this Application, the Debtor seeks approval for authority to employ Gulf Atlantic Capital Corp. ("Gulf Atlantic") as its financial advisor and exclusive investment banker to provide the services set forth in the preceding paragraph and the Letter Agreement (as defined below).

10. The Debtor submits that the employment of Gulf Atlantic is in the best interest of the Debtor, its estate and its creditors.

11. Prior to the Petition Date, the Debtor entered into an agreement with Gulf Atlantic to provide some of these services. The parties have entered into an agreement regarding the scope of the engagement and the consideration to be paid to Gulf Atlantic for providing such services. By this Application, the Debtor seeks to retain Gulf Atlantic as its financial adviser and exclusive investment banker in this bankruptcy case pursuant to the terms of the Letter Agreement. A copy of the Letter Agreement is attached hereto as Exhibit "A."

12. Gulf Atlantic will bill the Debtor for work performed by its professionals on an hourly basis. The individuals providing such services have agreed to keep contemporaneous time records.

13. In addition, Gulf Atlantic shall be reimbursed all its out-of-pocket expenses.

14. In the event of a sale, other than the sale to an Excluded Entity (as defined in the Letter Agreement), Gulf Atlantic shall be entitled to a Success Fee (the "Success Fee") of 2% of the Sales Price (as such term is defined in the Letter Agreement).

15. The Letter Agreement provides that Gulf Atlantic's engagement is terminable at will.

16. By this Application, the Debtor seeks the entry of an order authorizing the employment of Gulf Atlantic and approving the terms and conditions of the Letter Agreement.

WHEREFORE, the Debtor respectfully requests that this Court enter its order approving the employment and retention of Gulf Atlantic, approving the terms of the Letter Agreement and grant such other and further relief as may be just.

DATED: October 10, 2003

/s/ Russell M. Blain

Russell M. Blain
Florida Bar No. 0236314
Scott A. Stichter
Florida Bar No. 0710679
STICHTER, RIEDEL, BLAIN
  & PROSSER, P.A.
110 Madison Street - Suite 200
Tampa, Florida 33602
(813) 229-0144
(813) 229-1811 FAX
ATTORNEYS FOR THE DEBTOR

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY GULF ATLANTIC CAPITAL CORPORATION AS FINANCIAL ADVISOR AND EXCLUSIVE INVESTMENT BANKER has been furnished by U.S. MAIL on the 10th day of October, 2003 to:

Twenty Largest Unsecured Creditors Matrix Attached

SunTrust Bank
c/o John A. Anthony Esquire
GRAY, HARRIS, ROBINSON, SHACKLEFORD, FARRIOR
Post Office Box 3324
Tampa, Florida 33601-3324

Denise Barnett, Esquire
Office of the United States Trustee
501 East Polk Street
Tampa, Florida 33602

/s/ Russell M. Blain

Russell M. Blain
Florida Bar No. 0236314
Scott A. Stichter
Florida Bar No. 0710679

F:\User\HPS\Chapter 11s\CHC\Misc\application employ financial advisor (GULF ATLANTIC).doc 10/10/2003 8:24 AM

5

EXHIBIT "A"



October 6, 2003

Mr. Vito Parato
President
CHC Industries, Inc.
3055 Ruen Drive
Palm Harbor, FL 34685

Re: **Engagement Letter – Financial Advisory and Investment Banking Services**

Dear Vito:

This engagement letter supercedes our prior engagement letters including those dated August 5, 2003, July 1, 2003 and April 7, 2003 and reconfirms our understanding of the services that Gulf Atlantic Capital Corporation ("GACC") will provide to CHC Industries, Inc., ("CHC", "the Company").

We anticipate that CHC will file for bankruptcy protection on or about October 6, 2003. As we have discussed and you have indicated, CHC and its board of directors have decided to retain Gulf Atlantic Capital Corporation ("GACC") as their financial advisors and investment bankers to assist the Company in their bankruptcy proceedings. Our role will be advisory only and on a "best efforts" basis. The current management group will continue to manage and be solely responsible for the operation of CHC.

We expect that our services will include assisting CHC with marketing the Company and its assets to potential investors and purchasers, as well as assisting with the bankruptcy proceedings. We expect that our services may include the following:

<u>Financial Advisory Services</u>

- Assist CHC with developing and maintaining a weekly budget and rolling collateral position for cash collateral and operational purposes.

- As appropriate, assist CHC in pursuing capital sources, including debtor-in-possession financing.

- Assist CHC with the bankruptcy proceedings, including preparing information for the Company's creditors, assisting with court and U.S. Trustee reporting requirements, court appearances and other issues that may arise in the course of the bankruptcy proceedings.

- Assist CHC in negotiations with secured and unsecured creditors, including debtor-in-possession financing negotiations with SunTrust.

- Assist CHC's counsel with matters, as requested.

- Assist CHC with developing a plan of reorganization and disclosure statement.

- Other services as the Company shall request.

Investment Banking Services

Continue with efforts initiated prior to the Chapter 11 filing to develop and close on a sale transaction:

- If necessary, amend or revise the sale memorandum currently being used to introduce the Company to prospective purchasers.

- Continue to amend and add to the list of prospective purchasers for CHC, including strategic and financial investors.

- Initiate contact with prospective purchasers to assess their level of interest in pursuing a transaction.

- Provide CHC with regular reports (normally weekly) of the status of the M&A process, including the identity of the entities contacted, an assessment of the level of interest and the stage of the entity's due diligence.

- Assist CHC with developing and structuring a transaction with prospective purchasers.

- Assist CHC with purchaser due diligence.

- Assist CHC with negotiating and closing a sale transaction.

- As necessary, provide expert testimony related to any proposed transaction.

**Fee Structure**

The fee structure for our services is based on a combination of hourly fees based on monthly invoices and applications in accordance with local Bankruptcy rules and guidelines and a Success Fee due upon the completion of a sale transaction:

- Our hourly advisory fees are $200 to $350 per man-hour for time incurred. Our hourly advisory fees are not contingent upon the results of this engagement and do not constitute a prepayment or deposit on our Success Fee. Our hourly rates for the individuals with primary engagement responsibility include:

    - Theodore Gumienny, President     $350.00
    - Richard Gillies, Director     $310.00
    - Michael Verdisco, Director     $295.00
    - Brad Snyder, Associate     $265.00
    - Michael Germana, Associate     $255.00

    Other GACC professionals may be assigned to this case. Their hourly rate will be comparable to the rates listed above based on the individual's level of experience.

- In addition to our advisory fees, you will be billed for actual and reasonable disbursements and charges in connection with our representation, including charges for travel, photocopying, postage/delivery and other charges.

- In addition to our hourly advisory fees, a Success Fee will be earned at the closing of a sale transaction. This Success Fee will be based on two (2%) percent of the Sales Price (Cash and Non-Cash) as defined herein. The Success Fee (excluding any non-cash portion, as defined below) will be due and payable at closing and paid from the transaction proceeds.

- CHC acknowledges that GACC is being retained on an exclusive basis to provide M&A services to the Company. Other than the real estate agents that have been retained by the Company, the Company represents that no other party is currently engaged to provide M&A services on behalf of CHC or its shareholders and that no other entity is entitled to a Success Fee for this transaction. The Success Fee described herein is for the exclusive benefit of GACC

### Sale Transaction Success Fee

In addition to the hourly fees for advisory services described above Gulf Atlantic Capital will also be due a Success Fee upon the closing of a sale transaction involving a sale CHC's stock or the operating assets of CHC in whole or in part. The Success Fee for a sale transaction will be based on the following:

- Two (2%) percent of the Sales Price (Cash and Non-Cash) as defined herein. The Success Fee will be due and payable at closing and paid from the transaction proceeds.

### Excluded Entities

CHC has advised Gulf Atlantic Capital that the Company has previously contacted the following entities with regard to an M&A transaction:

- Evergreen Equities
- Watermill Ventures
- Corepoint Capital
- Cavalier Investment Partners
- Nagel Manufacturing and Supply Company
- United Wire Hanger Corporation
- Macromax International
- Pacific Trading Enterprises, Inc.

Gulf Atlantic Capital agrees to assist the Company in pursuing a transaction with these entities as part of its M&A services and agrees that there will be no Success Fee due to Gulf Atlantic Capital on a transaction involving these "Excluded Entities".

### Definition of Sales Price

For the purpose of calculating the Success Fee due to Gulf Atlantic Capital, Cash Sales Price includes, but is not limited to, the aggregate fair market value of all of the following as of the closing date of the transaction:

Cash Consideration

- Cash paid to the equity holders of the Company or to creditors on behalf of the Company.

Non-Cash Consideration

For other non-cash property (tangible or intangible) paid to the equity holders of the Company or to creditors on behalf of the Company, Gulf Atlantic Capital will negotiate the timing of the payment of its Success Fee based on an assessment of the ability of the equity holders or creditors to convert such consideration into cash:

- Face value of any notes payable or other debt instruments issued by the Purchaser to the creditors or equity holders of the Company.

- Fair market value of stock (common or preferred) or other equity securities issued to the equity holders or creditors of the Companies.

- Assumption of liabilities by the Purchaser, including, but not limited to:
  - Senior debt
  - Shareholder notes
  - Trade payables
  - Capital lease obligations

- The value of any contingent future payments based on earn-outs or other. These contingent payments will be valued as of the date of closing based on the "expected" case financial projections prepared for the purpose of structuring the transaction. These future payments will be discounted from the future payment date to the closing date using a 10% per annum discount rate.

- Any other consideration as may reasonably constitute value to the shareholders of the Company.

The summation of all of the above is defined to be the "Non-Cash Sales Price" for the purpose of calculating the Success Fee due to Gulf Atlantic Capital.

**Representations**

In rendering the foregoing services, we may inquire about the Company's operations and request such information as may be necessary for us to better understand your company. Our services are not designed, nor should they be relied upon, to uncover weaknesses in internal controls, financial statement errors or irregularities, or violations of any applicable laws. We will, however, inform you of any such irregularities, errors, or violations of law which come to our attention during the course of rendering services to the Company. Throughout this process, we will be working closely with the Company's management and we will rely on the information provided to us by management personnel. We will not audit or otherwise verify the information provided.

### Results are Not Guaranteed

While our goal in assisting you is to develop and implement a strategy for reorganizing in bankruptcy, including an M&A transaction, we cannot guarantee specific results. Any materials prepared by us are solely for the use of CHC and may not be reproduced, summarized or referred to, or given to any other person without our prior consent, which shall not be unreasonably withheld. Any materials reproduced for presentation to third parties must be reproduced only in entirety so that the information is presented in context with the other information contained in the report.

### Reporting and Limitations

We will report our findings, together with any recommendations, to Mr. Vito Parato and CHC's board of directors. Any decision to implement such recommendations will be solely that of Mr. Parato and the management, Board of Directors and shareholders of CHC. In no event shall GACC be liable for consequential, special, incidental or punitive losses (including with limitation, lost profits, opportunity costs, etc.) even if it has been advised of their possible existence.

CHC acknowledges that any transaction proposed by GACC may have tax consequences for the Company or its shareholders. GACC is not engaged to provide tax advice and CHC recognizes that it will need to obtain advice from its own tax professionals regarding any proposed transaction.

### Retainer, Invoicing and Termination

Since this representation of CHC will require a commitment on our part of substantial time and resources, we have agreed upon a $200,000.00 retainer as advance payment for our services on behalf of CHC, the "Advance Payment Retainer. The Advance Payment Retainer shall be applied by GACC to its fees and costs as they are incurred by GACC in the course of its representation of CHC; provided, however, that we shall comply with the disclosure, notice and application requirements of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. Unless otherwise ordered by the Bankruptcy Court, all post-petition fees and costs must be approved by the Bankruptcy Court based on fee applications. We shall make such application periodically to the Bankruptcy Court for compensation consistent with the requirements of the Bankruptcy Code and Rules. The parties agree that GACC is not prohibited from seeking approval from the Bankruptcy Court for additional compensation from the bankruptcy estate beyond the amount of the Advance Payment Retainer. Of course, to the

extent our fees, charges and disbursements are less than the Advance Payment Retainer, we will refund the difference, unless otherwise ordered by the Bankruptcy Court.

Our engagement is terminable at will, on your part, or ours. We have fixed our retainer with the understanding that if the case is converted to a Chapter 7 or a Chapter 11 trustee is appointed, we may seek to terminate our representation of CHC and that CHC agrees not to interpose any objection to our motion for leave to withdraw.

## Validity, Enforceability and Waiver of Jury Trial

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

**This Agreement may not be amended or modified except in writing signed by each of the parties hereto and shall be governed by and construed in accordance with the laws of the State of Florida. Each of the parties hereto agrees that any dispute (including fee disputes) shall be submitted to the Bankruptcy Court having jurisdiction over the Company's case.**

If there are any questions, please contact Rick Gillies or Ted Gumienny at 813-288-8141.

Very truly yours,

**GULF ATLANTIC CAPITAL CORPORATION**

By: _____
Rick Gillies, Director

                                 **ACKNOWLEDGED AND ACCEPTED:**
                                 **CHC INDUSTRIES, INC.**

                                 By: _____
                                       Vito Parato, President

                                 Date: 10/7/03

| | | |
|---|---|---|
| AON Risk Services, Inc.<br>75 Remittance Dr.<br>Chicago, IL 60675-1943 | Allen Lund Freight Company<br>P.O. Box 51083<br>Los Angeles, CA 90051 | Baltimore County Maryland<br>Post Office Box 64281<br>Baltimore, MD 21264-4281 |
| Blue Cross/Blue Shield<br>P.O. Box 2458<br>Jacksonville, FL 32231 | City of Brenham<br>P.O. Box 1059<br>Brenham, TX 77833 | Ferrostaal Metals<br>P.O. Box 922553<br>Dallas, TX 75391 |
| Georgetown Steel<br>P.O. Box 101772<br>Atlanta, GA 30392-1772 | Georgia Pacific Corp.<br>P.O. Box 751819<br>Charlotte, NC 28275-1819 | Gerdau Ameristeel<br>P.O. Box 644003<br>Pittsburgh, PA 15264-4003 |
| Holland & Knight<br>P.O. Box 32092<br>Lakeland, FL 33802-2092 | Ispat of America<br>3429 Collection Center Drive<br>Chicago, IL 60693 | Jamestown Paint Company<br>108 Main Street<br>Jamestown, PA 16134 |
| L&P Financial Services<br>P.O. Box 952092 - Main Post Office<br>Saint Louis, MO 63195-2092 | Metro Supply Company<br>1534 Date Street<br>Montebello, CA 90640 | Pavsner Press, Inc.<br>9008 Yellow Brick Road<br>Baltimore, MD 21237-5606 |
| Personnel Service<br>2554 Ryan St.<br>Brenham, TX 77833 | Relizon Company, The<br>P.O. Box 676496<br>Dallas, TX 75267-6496 | Ryder Transportation Services, Inc.<br>P.O. Box 96723<br>Chicago, IL 60693 |
| Sonoco Products<br>P.O. Box 281728<br>Atlanta, GA 30384-1728 | Warehouse Employees Local 570<br>Trust Fund<br>1005 Northpointe Rd., Ste 726<br>Baltimore, MD 21224 | SunTrust Bank<br>c/o John A. Anthony Esquire<br>GRAY, HARRIS, ROBINSON, SHACKLEFORD, FARRIOR<br>Post Office Box 3324<br>Tampa, Florida 33601-3324 |

Denise Barnett, Esquire
OFFICE OF THE UNITED STATES TRUSTEE
501 East Polk Street
Tampa, Florida 33602